UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL WARD,

    Petitioner,

v.

MATT MACAULEY,

    Respondent.

Case No.  21-cv-12773

Honorable Denise Page Hood

---

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PETITIONER PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

---

Petitioner Nathaniel Ward is a state inmate in the custody of the Michigan Department of Corrections.  Petitioner filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions of third-degree criminal sexual conduct (CSC-III), Mich. Comp. Laws § 750.520d(1)(c), and resisting or obstructing an officer, Mich. Comp. Laws § 750.81d(1). (*See Pet*., ECF No. 1.) Petitioner raises claims concerning improper admission of other-acts evidence, ineffective assistance of preliminary-examination counsel, and jurisdictional errors. On February 7, 2022, Respondent filed an answer and the Rule 5 materials. (ECF Nos. 8-9, 11)  For the reasons stated below, the Court denies the

petition, denies a certificate of appealability, and denies Petitioner leave to proceed in forma pauperis on appeal.

## I.      BACKGROUND

Petitioner's convictions arose from a sexual assault that occurred at the victim's sister's home in River Rouge, Michigan. This Court recites the facts from the Michigan Court of Appeals' opinion affirming Petitioner's convictions, which are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> While visiting her sister in River Rouge, JH, the victim in this case, came into contact with three male friends of her sister whom she did not know. One of them was defendant. JH testified at trial that she fell asleep on her sister's couch, and awoke during the early morning hours of May 30, 2018, to defendant inserting his fingers into her vagina. JH pushed defendant off of her, a brief physical altercation occurred, and defendant was eventually ushered out of the house by JH's sister and another friend. Defendant left behind his cell phone; JH testified that she looked in his phone to find his name. JH then searched Michigan's Offender Tracking Information System (OTIS) for defendant's name, and because defendant was on parole at the time, found information about defendant and a photograph of him. JH reported the assault and defendant's identity to the police and defendant's parole officer, and a warrant was issued for defendant's arrest.
>
> Later that day, Investigator John Hugle of the Absconder Recovery Unit (ARU), which is a branch of the Michigan Department of Corrections (MDOC), responded to the arrest warrant for defendant. Investigator Hugle began to surveil defendant's home in River Rouge; two hours later, defendant arrived on a bicycle and entered the residence. Investigator Hugle approached the front door and knocked. Defendant

opened the front door slightly and Investigator Hugle, who was wearing clothing and body armor that clearly identified him as an officer with MDOC, announced that he had a warrant for defendant's arrest and asked him to come outside. Defendant said "no," attempted to push the door closed, and began backpedaling. Investigator Hugle stopped the door with his foot, then saw defendant begin to turn and reach toward his pockets. Fearing for his safety, Investigator Hugle deployed his taser, incapacitating defendant, who was then arrested. Two folding knives were found in defendant's pockets.

Prior to trial, the prosecution moved the circuit court under MRE 404(b) to admit JH's testimony concerning her use of OTIS to identify defendant and her call to his parole officer, as well as testimony from an MDOC employee concerning the nature of OTIS, which would have the effect of revealing defendant's status as a parolee, although his specific prior crimes would not be disclosed. The prosecution argued that the evidence was admissible for the purpose of showing the identity of the defendant and explaining how JH, who had just met defendant that day, was able to identify him by name and photograph. Defendant argued that the evidence was impermissible propensity evidence and was unfairly prejudicial. The circuit court allowed the testimony, but gave a limiting instruction to the jury before its deliberations, as discussed later in this opinion.

Defendant was convicted and sentenced as described. This appeal followed. After filing his claim of appeal, defendant filed a motion *in propria persona* with this Court, seeking to remand for a *Ginther* hearing on the issue of his trial counsel's ineffectiveness, which this Court denied.

*People v. Ward*, No. 348475, 2020 WL 6375202, at *1–2 (Mich. Ct. App. Oct. 29, 2020).

A Wayne County Circuit Court jury convicted Petitioner of CSC-III and resisting or obstructing an officer. The trial court sentenced him as a fourth-

3

offense habitual offender, Mich. Comp. Laws §  769.12, to 25 to 50 years'

imprisonment for his CSC-III conviction and 10 to 15 years for his resisting

or obstructing an officer conviction.   Petitioner filed a direct appeal in the

Michigan Court of Appeals. On October 29, 2020, the Michigan Court of

Appeals affirmed his convictions and sentence. *Ward*, 2020 WL 6375202, at

*1. Petitioner filed an application for leave to appeal in the Michigan Supreme

Court, which denied the application on the basis that it was "not persuaded

that the questions presented should be reviewed by this Court." *People v.*

*Ward*, 507 Mich. 902, 956 N.W.2d 214 (2021).

Petitioner then filed the present habeas action, which the Court

understands as raising the following claims:

> I.      [The] Court abuse[d] its discretion when it attempted to
> administrate the trust/estate when all named judges acting as
> trustee and the court allowing the prosecutor in admitting
> evidence acting as executor with no authority or permission when
> they are aware that the affiant is the executor.
>
> II.     The magistrate judge is required by statute to make a
> "proper return" to the circuit court where the party charged is
> bound to appeal.
>
> III.    Ineffective    assistance    of    counsel    of    preliminary
> examination counsel.
>
> IV.     If a court is erroneously without authority its judgment and
> orders are regarded as nullities.

ECF No. 1, PageID.5-10.

4

Respondent filed an answer in opposition to the petition contending that it should be denied because certain claims are procedurally defaulted, and all the claims lack merit.

## II.    LEGAL STANDARD

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An

5

"unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## III.   DISCUSSION

### A. Procedural Default

Respondent contends that portions of habeas claims II and IV are barred by procedural default. The Court declines to address that defense as it is not a jurisdictional bar to review of the merits. *See, e.g., Howard v.*

6

*Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. Accordingly, the Court will proceed to the merits of Petitioner's claims.

### B. Other-Acts Evidence

Petitioner first challenges the trial court's decision to grant the prosecution's MRE 404(b) motion and admit evidence related to Petitioner's Offender Tracking Information System (OTIS) profile and his status as a parolee. The Michigan Court of Appeals rejected this claim on direct review, concluding that "the use of OTIS to find defendant was probative of [the victim's] ability to identify him" and Petitioner was not prejudiced by the evidence. *Ward*, 2020 WL 6375202, at *2-5. Petitioner did not assert in state court, nor does he assert here, that the evidentiary error violated his federal constitutional rights.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

As to the admission of other acts evidence, the Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352–53 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, the state court's decision is not "contrary to"

any Supreme Court precedent addressing this issue. *Id*. at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).

Petitioner fails to state a claim upon which habeas relief may be granted.

C. Ineffective Assistance of Counsel

Next, Petitioner argues that he was denied the effective assistance of counsel during the district court proceedings and the preliminary examination.  Specifically, he contends that trial counsel failed to file certain motions on his behalf and made serious errors.  The Court presumes that the serious errors refer to the other arguments presented before the state courts on the issue.  Those errors include the failure to object to the felony-complaint, the warrant, and the district court's jurisdiction; the failure to properly cross-examine witnesses; and failure to investigate the case. The Court will address each of Petitioner's arguments in turn.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. When counsel is ineffective, that right is abridged. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v.*

9

*Washington,* 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.  "[T]he

question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

     1. <u>Failure to Object / File Motions</u>

Petitioner complains that trial counsel failed to file certain motions on his behalf challenging the district court's jurisdiction and moving for dismissal of his criminal case because of due process violations. Petitioner also raised arguments before the state courts that counsel failed to object to the felony complaint, felony warrant, and district court's jurisdiction. The Court concludes that these arguments lack merit.

    The Michigan Court of Appeals rejected Petitioner's claims attacking the felony complaint, warrant, and district court's jurisdiction on the basis that Petitioner failed to establish any error occurred under state law. *Ward*, 2020 WL 6375202, at *6-9. When deciding the ineffective-assistance-of-counsel claim, the court stated that "as discussed earlier in this opinion, we find no error requiring reversal in any of these allegations." *Id*. at *10. The Court "must defer to state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quotation omitted). Because the court of appeals determined that there were no errors in the felony complaint and the warrant

and the district court retained jurisdiction, any objection made by trial counsel would have been futile. Attorneys do not provide constitutionally ineffective assistance for electing not to take futile actions, *Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019) (citing *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000)), or for "failing to raise . . . meritless arguments," *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *see also Downs v. United States*, 879 F.3d 688, 691 (6th Cir. 2018); *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017). For the same reasons, any motions filed on behalf of Petitioner raising these same issues would have been futile.  Petitioner fails to establish an ineffective-assistance-of-counsel claim on this basis.

2. Cross-Examination

Petitioner next argues that counsel was ineffective for failing to effectively cross-examine witnesses during the preliminary examination. The Michigan Court of Appeals also rejected this argument, concluding that:

> Defendant also argues that his counsel was ineffective for failing to adequately cross-examine the prosecution's witnesses during the preliminary examination. Generally, counsel's decision regarding whether or how to cross-examine witnesses is a matter of trial strategy, "which we will not second-guess with the benefit of hindsight." *People v. Dixon*, 263 Mich. App. 393, 398; 688 N.W.2d 308 (2004). During the preliminary examination, the prosecution called Investigator Hugle as the first witness. After Investigator Hugle provided testimony about his altercation with defendant during his arrest, defendant's district court counsel engaged in the following brief cross-examination:

> Q. Did you have a bodycam on?
>
> A. No, sir.
>
> Q. Okay. Is it a policy . . .
>
> A. No, sir.
>
> Q. . . . if you wear a bodycam or not?
>
> A. No, sir. No, sir.
>
> Q. Okay.

JH also testified at the preliminary examination, and the prosecution elicited testimony that substantively matched her testimony during trial. Defense counsel only asked JH one question on cross-examination:

> Q. Uh, I just want to clarify ma'am, when—when, um, [defendant], um, had his fingers in your vagina, was anybody else present, anybody else see this to your knowledge?
>
> A. No.

On the second day of the preliminary examination, the prosecution called Lieutenant Vanderaa to testify regarding the two knives found in defendant's possession after his arrest. Defense counsel did not ask any questions on cross-examination.

Defense counsel's strategy during cross-examination was clear—to ensure that the district court judge was aware that there were no other witnesses to defendant's alleged sexual assault of JH and that there was no bodycam footage of defendant's arrest. Although the cross-examination was brief, defense counsel elicited these weaknesses in the prosecution's case from the testifying witnesses. Defendant has failed to overcome the presumption that defense counsel's conduct was the product of

sound trial strategy. *Johnson*, 315 Mich. App. at 174; *Schrauben*, 314 Mich. App. at 190; *Dixon*, 263 Mich. App. at 398.

Further, even if his counsel's cross-examination of witnesses during the preliminary examination was objectively unreasonable, defendant would still be unable to prove prejudice. *Cooper*, 309 Mich. App. at 80; *see also Strickland*, 466 U.S. at 694. Defendant was not prejudiced by counsel's decision not to cross-examine Lieutenant Vanderaa about his finding knives in defendant's pockets, because the CCW charges were dismissed before the case went to trial. Further, defendant has not explained how additional cross-examination of Investigator Hugle or JH would have changed the outcome of the proceedings. Both Investigator Hugle and JH presented specific testimony that defendant had digitally penetrated JH while she was asleep, and then resisted or obstructed Investigator Hugle during his arrest. There is nothing apparent on the record that suggests that further cross-examination during the preliminary examination would have resulted in defendant not being bound over to the circuit court. Defendant has not demonstrated a reasonable probability that, but for any errors by his counsel, the proceedings against him would have had different results. *Strickland*, 466 U.S. at 694.

Defendant also argues that his counsel's cross-examination of JH was ineffective for an additional reason, i.e., that his counsel's only question implied that defendant had committed the digital penetration. However, as noted, JH had already testified that defendant digitally penetrated her vagina while she was sleeping. Defense counsel's question about whether anyone saw this event occur, while perhaps not perfectly crafted, certainly did not cause defendant prejudice. *Id*.

*Ward*, 2020 WL 6375202, at *10-11.

The Michigan Court of Appeals' decision was not unreasonable. Counsel's decisions regarding how to cross-examine and impeach witnesses are matters of trial strategy, which are entitled to "great respect"

14

by this Court. *See Glenn v. Sowders*, No. 85-5754, 1986 WL 18475, at *4 (6th Cir. Dec. 8, 1986); *see also Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). While there may be room for improvement in cross-examination, were that to be "the standard of constitutional effectiveness, few would be the counsel whose performance [pass] muster." *Henderson*, 118 F.3d at 1287 (quoting *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996)). The issue is not whether counsel's approach was the optimal approach; the issue is not even "whether counsel's actions were reasonable[,] *Harrington*, 562 U.S. at 105; the issue is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard[.]" *Id*.

Here, Petitioner challenges counsel's cross-examination of Investigator John Hugle and the victim.  As discussed by the court of appeals, counsel's cross-examination of both witnesses was very brief, yet still elicited some of the weaknesses in the prosecution's case. For instance, counsel's cross-examination of Investigator Hugle established that no body cam footage of Petitioner's arrest existed.  Additionally, the victim's cross-examination established that there were no other witnesses to the sexual assault.  Moreover, "eschewing cross-examination at the preliminary

examination stage is a reasonable strategy. Extensive questioning would tip the prosecution to the weaknesses in its case, but not likely prevent the defendant from being prosecuted because the state need only show probable cause [to obtain a bindover to circuit court]." *Vasquez v. Jones*, 496 F.3d 564, 578 (6th Cir. 2007). Considering the evidence against Petitioner, counsel's decision to forgo extensive cross-examination was reasonable. Further, Petitioner has not shown prejudice resulting from counsel's actions as the state-court record suggests that the district court would have bound over to the circuit court despite any additional cross-examination. Accordingly, Petitioner is not entitled to relief on this claim.

    3. <u>Failure to Investigate</u>

    Petitioner argues that counsel was ineffective for failing to investigate his case. The Michigan Court of Appeals rejected this claim as well:

> Lastly, defendant argues that his counsel failed to properly investigate the case, that proper investigation would have led to additional witnesses testifying at the preliminary examination, and that his counsel failed to meet with defendant before the preliminary examination. "The failure to reasonably investigate a case can constitute ineffective assistance of counsel." *People v. Anderson*, 322 Mich. App. 622, 630; 912 N.W.2d 607 (2018). The defendant bears the burden of establishing the factual predicate for his claim of inadequate investigation. *Anderson*, 322 Mich. App. at 628.

> Defendant has failed to establish the factual predicate for his claim. Although he claims a more thorough investigation by his counsel would have uncovered additional witnesses, he fails to

16

identify any such witnesses or describe what their testimony would have been and how that would have benefited his case. *Id*. Regarding defendant's claim that his attorney failed to meet with him prior to the preliminary examination, defendant has not established the factual basis for this claim; further, defendant has not specified how he was prejudiced by his attorney's alleged failure to meet with him. As we have discussed, defendant's attorney was clearly versed in the facts of the case at the time of the preliminary examination, and employed a reasonable strategy of pointing out a lack of corroborating evidence. We find defendant's argument to be without merit. *Id*.; *Anderson*, 322 Mich. App. at 628.

*Ward*, 2020 WL 6375202, at *11.

The Michigan Court of Appeals' decision was not unreasonable. The Court agrees that Petitioner failed to sufficiently establish a factual predicate for his claim.  Petitioner does not identify any facts supporting his claim, nor does the claim appear to be properly briefed. A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material to his defense. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002).

Petitioner cannot prevail on his claim because he fails to show how pretrial counsel had allegedly been deficient in failing to perform additional work that would have been beneficial to his defense. *See Martin v. Mitchell*, 280 F.3d 594, 607-08 (6th Cir. 2002). Nor has Petitioner provided the

Michigan courts or this Court with an affidavit from any witnesses concerning their proposed testimony and willingness to testify on his behalf. In failing to attach any offer of proof or any affidavit sworn by any proposed defense witnesses, Petitioner fails to offer any evidence beyond his own assertions as to whether there were witnesses who would have testified favorably for him. Without such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to investigate to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner is not entitled to relief on this claim.

D. <u>Jurisdictional Errors</u>

Lastly, in claims II and IV, Petitioner challenges the state courts' jurisdiction over his criminal case. Because these claims are related, the Court will discuss them together.

In habeas claim II, Petitioner argues that his conviction and sentence was "for all purposes a judicial nullity" because the district court failed to make a "proper return" thereby stripping the court of authority or subject matter jurisdiction. In habeas claim IV, he argues that the state trial court

18

lacked jurisdiction to preside over his criminal case, sentence him, and enter a final judgment. The Michigan Court of Appeals disagreed with both arguments, concluding that the district court did not lose jurisdiction over the Petitioner and "the circuit court had both subject-matter and personal jurisdiction to consider defendant's case." *Ward*, 2020 WL 6375202, at *6-12. The Michigan Court of Appeals rejected all of Petitioner's jurisdictional challenges. *Id*. at *7-14.

Petitioner's argument that any of the state courts lacked jurisdiction over his criminal case fails to state a claim on habeas review. The determination of whether a particular state court is vested with jurisdiction under state law and is the proper venue to hear a criminal case is a "function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). The Michigan Supreme Court has described the concept of subject matter jurisdiction as follows: "Subject matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of the case." *People v. Lown*, 794 N.W.2d 9, 24 (Mich. 2011) (internal quotation marks and emphasis omitted). "Michigan circuit courts are court of general jurisdiction and unquestionably have jurisdiction over felony cases." *Id*.; *see also* Mich.

Const. of 1963, art. 6, §§ 1 & 13; Mich. Comp. Laws §§ 600.151, 600.601, and 767.1.

Any purported violation of state law does not provide a basis for federal habeas relief. *See Estelle*, 502 U.S. at 67–68. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. Petitioner simply offers no basis to challenge the trial court's jurisdiction.  Petitioner, therefore, is not entitled to relief with respect to this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The court finds that reasonable jurists would not debate the

resolution of any of Petitioner's claims and will therefore deny a certificate of appealability.

## V.    CONCLUSION

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner will be **DENIED** leave to appeal *in forma pauperis* as an appeal cannot be taken in good faith.

**IT IS SO ORDERED.**

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated:  March 28, 2025